*129
 
 OPINION OF THE COURT
 

 Hancock, Jr., J.
 

 The New York State Mined Land Reclamation Law (ECL 23-2701 — 23-2727) establishes a detailed legislative scheme under which the Department of Environmental Conservation is empowered to regulate mining and the reclamation of mined lands and to promulgate and enforce necessary and appropriate standards and rules and regulations for such purposes. Among other things, the Department is specifically authorized to establish criteria for "the operation of mining” (ECL 23-2709 [1] [d]) and for the "acceptable reclamation of affected lands” (ECL 23-2709 [1] [e]) and to examine and pass on applications for permits and for the approval of “land-use plans including mining and reclamation plans” (ECL 23-2709 [1] [c]). The statute contains the following provision with respect to the preemption of local laws: "For the purposes stated herein, this title shall supersede all other state and local laws relating to the extractive mining industry; provided, however, that nothing in this title shall be construed to prevent any local government from enacting local zoning ordinances or other local laws which impose stricter mined land reclamation standards or requirements than those found herein.” (ECL 23-2703 [2].)
 

 In this appeal by the operator of a sand and gravel business, the question is whether the Mined Land Reclamation Law was intended to preempt the provisions of a town zoning law establishing a zoning district where a sand and gravel operation is not a permitted use. For reasons hereinafter stated, we agree with the Appellate Division that the statute was not intended to have this preemptive effect.
 

 I
 

 Petitioner obtained a permit from the Department of Environmental Conservation pursuant to ECL 23-2711 authorizing it to conduct a sand and gravel operation on its property at the intersection of Frew Run Road and Bain Road in the Town of Carroll, Chautauqua County — an area located within
 
 *130
 
 the AR-2 district under the town zoning ordinance.
 
 *
 
 The stated purpose of the AR-2 district is "to promote maintenance of agricultural lands as well as to allow large lot residential development”. Consistent with this purpose, the ordinance allows specified residential and commercial uses as a matter of right in the AR-2 district and other such uses by special permit. Sand and gravel operations are not permitted at all in AR-2, although they are allowed by special permit in AR-3.
 

 Upon receipt of a notice from the town’s zoning enforcement officer that its operation was prohibited, petitioner commenced the within proceeding to restrain the town and its officials from enforcing the ordinance. Special Term held that the town zoning ordinance designating a district where mining was not a permitted use was superseded by the express provisions of ECL 23-2703 (2). A unanimous Appellate Division reversed, holding that the town zoning law "is not a law 'relating to the extractive mining industry’ ” and to the extent that "the local law bars gravel and sand operations from an AR-II zone, it does not purport to regulate an industry. It simply seeks to regulate land use generally.” (125 AD2d 928, 929.) Petitioner appeals by leave of this court. There should be an affirmance.
 

 II
 

 The Legislature has simplified our determination of whether the Mined Land Reclamation Law preempts the provisions of the town zoning ordinance in question. Unlike preemption cases which require the court to search for indications of am implied legislative intent to preempt in the Legislature’s declaration of a State policy or in the comprehensive and detailed nature of the regulatory scheme established by the statute
 
 (see, e.g., Consolidated Edison Co. v Town of Red Hook,
 
 60 NY2d 99, 105;
 
 Robin v Incorporated Vil. of Hempstead,
 
 30 NY2d 347, 350-351;
 
 cf., Jancyn Mfg. Corp. v County of Suffolk,
 
 
 *131
 
 71 NY2d 91 [decided herewith]), we deal here with an express supersession clause (ECL 23-2703 [2]). The appeal turns on the proper construction of this statutory provision.
 

 In ECL 23-2703 (2) the Legislature has provided that the Mined Land Reclamation Law shall supersede all "local laws relating to the extractive mining industry”. The question is whether the Town of Carroll Zoning Ordinance, in establishing districts in which some uses are permitted and others prohibited, is the sort of local law contemplated by the Legislature in this supersession provision. To find the answer, we look to the plain meaning of the phrase "relating to the extractive mining industry” as one part of the entire Mined Land Reclamation Law, to the relevant legislative history, and to the underlying purposes of the supersession clause as part of the statutory scheme
 
 (see, People v Hedgeman,
 
 70 NY2d 533, 537;
 
 Price v Price,
 
 69 NY2d 8, 13, 14).
 

 Turning first to the statute’s plain meaning and reading the language in its natural and most obvious sense
 
 (see,
 
 McKinney’s Cons Laws of NY, Book 1, Statutes § 94), we cannot interpret the phrase "local laws relating to the extractive mining industry” as including the Town of Carroll Zoning Ordinance. The zoning ordinance relates not to the extractive mining industry but to an entirely different subject matter and purpose: i.e., "regulating the location, construction and use of buildings, structures, and the use of land in the Town of Carroll, County of Chautauqua, State of New York and for said purposes dividing the Town into districts” (Town of Carroll Zoning Ordinance, art I, § 101). The purpose of a municipal zoning ordinance in dividing a governmental area into districts and establishing uses to be permitted within the districts is to regulate land use generally. In this general regulation of land use, the zoning ordinance inevitably exerts an incidental control over any of the particular uses or businesses which, like sand and gravel operations, may be allowed in some districts but not in others. But, this incidental control resulting from the municipality’s exercise of its right to regulate land use through zoning is not the type of regulatory enactment relating to the "extractive mining industry” which the Legislature could have envisioned as being within the prohibition of the statute ECL 23-2703 (2)
 
 (compare, Matter of Northeast Mines v State of New York Dept. of Envtl. Conservation,
 
 113 AD2d 62,
 
 appeal dismissed
 
 67 NY2d 917 [Town of Smithtown ordinance regulating the removal of earth and earth products and establishing maximum depths
 
 *132
 
 for excavation which was held to be superseded by ECL 23-2703 (2)]). This conclusion is consistent with the purposes and policy considerations underlying the Mined Land Reclamation Law, apparent upon an examination of the entire statute and the legislative history leading to its enactment.
 

 The purposes of the statute are "to foster a healthy, growing mining industry” and "aid in assuring that land damaged by mining operations is restored to a reasonably useful and attractive condition” (Mem of Governor Wilson, June 15, 1974, filed with Assembly Bill 10463-A, Governor’s Bill Jacket, L 1974, ch 1043). The policy of the State, the Legislature has declared, is "to foster and encourage the development of an economically sound and stable mining and minerals industry” (ECL 23-2703 [1]). To further this policy, the Mined Land Reclamation Law was enacted to "establish the badly needed guidelines which would allow for the utilization of the state’s vast mineral resource based in a manner compatible with wise resource management” and to eliminate "[regulation on a town by town basis [which] creates confusion for industry and results in additional and unfair costs to the consumer” (Mem of Department of Environmental Conservation in support of Assembly Bill 10463-A, May 31, 1974, Governor’s Bill Jacket, L 1974, ch 1043). Thus, one of the statute’s aims is to encourage the mining industry by the adoption of standard and uniform restrictions and regulations to replace the existing "patchwork system of [local] ordinances”
 
 (id.).
 
 At the same time, the statute is intended to achieve a parallel and equally important purpose: meeting the environmental concerns created by the growing number of "derelict mining sites” through the establishment of controls and regulations to "provide for the reclamation of lands affected by mining for the purpose of returning such lands to other productive uses”
 
 (id.).
 

 To give effect to these two legislative aims, the Mined Land Reclamation Law and the departmental regulations promulgated thereunder
 
 (see,
 
 ECL 23-2721; 6 NYCRR part 422) provide separate and different requirements for mining and for the reclamation of mined lands. The two activities are separately defined (ECL 23-2705 [8], [14]) and the statute and regulations require separate mined land-use plans (ECL 23-2713; 6 NYCRR 422.2) and reclamation plans (ECL 23-2715; 6 NYCRR 422.3). The mechanism created by the statute to accomplish these dual purposes makes clear that the Legislature intended in ECL 23-2703 (2) to prohibit any local regula
 
 *133
 
 tion pertaining to actual mining activities, but not to preclude more stringent local laws pertaining to reclamation. Thus, ECL 23-2703 (2) contains a proviso that the statute shall not "be construed to prevent any local government from enacting local zoning ordinances or other local laws which impose
 
 stricter mined land reclamation standards or requirements
 
 than those found herein” (ECL 23-2703 [2] [emphasis added]). The Legislature has, in effect, provided "for a State-wide standard for regulation of the mining aspect of the industry’s operations, while recognizing the legitimate concerns of localities in the aftereffects of mining by permitting stricter local control of reclamation”
 
 (Matter of Northeast Mines v State of New York Dept. of Envtl. Conservation,
 
 113 AD2d 62, 64-65,
 
 supra).
 

 From the statutory scheme and the legislative history, it is evident that the sole purpose of the supersession provision (ECL 23-2703 [2]) is to prevent local governments from enacting laws which would conflict with or frustrate one or both of the statute’s purposes. Local regulations dealing with the actual operation and process of mining would frustrate the statutory purpose of encouraging mining through standardization of regulations pertaining to mining operations
 
 (see, Matter of Northeast Mines v State of New York Dept. of Envtl. Conservation, supra).
 
 Stricter local standards for the reclamation of mined lands, however, would be consistent with the statute’s over-all aim of protecting the environment. There is nothing in the Mined Land Reclamation Law or its history indicating that ECL 23-2703 (2) was intended to be given the preemptive effect petitioner urges; and, for that matter, nothing suggests that its reach was intended to be broader than necessary to preempt conflicting regulations dealing with mining operations and reclamation of mined lands.
 

 Moreover, to read into ECL 23-2703 (2) an intent to preempt a town zoning ordinance prohibiting a mining operation in a given zone, as petitioner would have us, would drastically curtail the town’s power to adopt zoning regulations granted in subdivision (6) of section 10 of the Statute of Local Governments (L 1964, ch 205) and in Town Law § 261. Such an interpretation would preclude the town board from deciding whether a mining operation — like other uses covered by a zoning ordinance — should be permitted or prohibited in a particular zoning district
 
 (see,
 
 1 Anderson, NY Zoning Law and Practice, §§ 2.04, 2.05, 2.06, 2.09, 2.13 [3d ed];
 
 see generally, Wambat Realty Corp. v State of New York,
 
 41 NY2d 490).
 
 *134
 
 In the absence of any indication that the statute had such purpose, a construction of ECL 23-2703 (2) which would give it that effect should be avoided. By simply reading ECL 23-2703 (2) in accordance with what appears to be its plain meaning— i.e., superseding any local legislation which purports to control or regulate extractive mining operations excepting local legislation prescribing stricter standards for land reclamation — the statutes may be harmonized, thus avoiding any abridgement of the town’s powers to regulate land use through zoning powers expressly delegated in the Statute of Local Governments § 10 (6) and Town Law § 261
 
 (see,
 
 McKinney’s Cons Laws of NY, Book 1, Statutes §§ 370, 391, 398). This is the construction we adopt.
 

 The order of the Appellate Division should be affirmed, with costs.
 

 Chief Judge Wachtler and Judges Simons, Kaye, Alexander, Titone and Bellacosa concur.
 

 Order affirmed, with costs.
 

 *
 

 The DEC permit contains the "general condition” that: "16. The issuance of this permit does not exempt the permittee from the need to obtain a local permit or approval where and when required” and the "special condition” that: "1. This permit shall not constitute a determination of validity or enforceability of the zoning ordinance of the Town of Carroll, with respect to the location of mines, nor of the applicability of such zoning to this action (see General Condition No. 16 above).” Thus, the DEC, in its issuance of the permit, has taken no position on the validity of the zoning ordinance.