TROY SAND & GRAVEL COMPANY, INC., et al., Respondents, v TOWN OF NASSAU et al., Appellants. [957 NYS2d 444]—

Spain, J.

In November 2011, the Town Board held a special meeting concerning plaintiff's pending 2004 applications for a special

---

use permit and site plan review, and determined that it would hire a planning consultant to provide expert assistance to the Town in analyzing environmental issues as part of its review of the pending applications, as authorized by the Town's 1986 "Land Use and Development Regulations of the Town of Nassau, Rensselaer County, New York" (hereinafter the zoning regulations).[1] Notably, as required by the zoning regulations, plaintiff—as applicant—must reimburse the Town for the costs incurred by this consultant. Shortly thereafter, plaintiffs commenced this declaratory judgment action (which is still pending) seeking a declaration, among others, that (1) the Town and Town Board (hereinafter collectively referred to as the Town) are bound—in their review of plaintiff's applications—by all determinations made in DEC's SEQRA review, (2) the Town is without authority to either revisit any environmental issue addressed in the SEQRA findings or to retain a professional consultant for the purpose of reviewing any environmental issue already determined in the SEQRA process, and (3) plaintiff is not required to reimburse the Town for any costs incurred in retaining the consultant.

Plaintiffs also requested a preliminary injunction, during the pendency of the action and by order to show cause, restraining the Town from incurring any expense associated with hiring a consultant to review any issue that has already been determined in the SEQRA process. Supreme Court issued a written decision partially granting the requested preliminary injunction by enjoining the Town from reassessing, pursuant to the zoning regulations governing special use permits, the environmental impact of the proposed quarry to the extent already addressed by the SEQRA determination and further stated that any review of plaintiff's applications shall "not include a reconsideration of DEC's SEQRA determination" (*Troy Sand & Gravel Co., Inc. v Town of Nassau*, 34 Misc 3d 1219[A], 2012 NY Slip Op 50182[U], *4 [Sup Ct, Rensselaer County 2012]). Defendants now appeal, challenging the grant of injunctive relief.

We find merit in defendants' argument on appeal that Supreme Court erred in granting plaintiffs' request for a preliminary injunction, which effectively precluded the Town from following its zoning regulations to the extent that they authorize consideration of environmental factors in its review of plaintiff's pending applications. Plaintiffs did not demonstrate a

---

1. Although these zoning regulations have since been replaced and superseded, the parties stipulated in 2010 that the pending applications will be reviewed pursuant to the zoning regulations in effect in 1986 (*see* Local Law No. 2 [1986] of Town of Nassau).

likelihood of success on the merits, that irreparable harm will occur without this relief, or that the equities balance in their favor (*see Emerald Green Prop. Owners Assn., Inc. v Jada Developers, LLC*, 63 AD3d 1396, 1397 [2009]).

To begin, we agree with Supreme Court that DEC's SEQRA determination, including its findings statement and accepted final environmental impact statement, are binding on the Town to the extent that it may not conduct its own or any de novo SEQRA review (*see Matter of Gordon v Rush*, 100 NY2d 236, 243 [2003]). However, local land use matters and zoning decisions—such as the consideration of special use permits—are within the exclusive responsibility of the Town, as representative of its local community, which "possess[es] the familiarity with local conditions necessary to make the often sensitive planning decisions which affect the development of [its] community" (*Matter of Cowan v Kern*, 41 NY2d 591, 599 [1977]; *see Matter of Albany-Greene Sanitation v Town of New Baltimore Zoning Bd. of Appeals*, 263 AD2d 644, 646 [1999], *lv denied* 94 NY2d 752 [1999]; *Waste Mgt. of N.Y., LLC v Town of Albion*, 18 Misc 3d 1133[A], 2005 NY Slip Op 52343[U], *8 [Sup Ct, Orleans County 2005], *affd* 32 AD3d 1295 [2006], *lv denied* 8 NY3d 805 [2007]; *see* Town Law § 261). Significantly, while zoning ordinances are to be interpreted and administered in accord with SEQRA, the SEQRA process and requirements do "not change the existing jurisdiction of agencies nor the jurisdiction between or among state and local agencies" (6 NYCRR 617.3 [b]; *see* ECL 8-0103 [6]; *Matter of Albany-Greene Sanitation v Town of New Baltimore Zoning Bd. of Appeals*, 263 AD2d at 646)—that is, "SEQRA neither preempts nor interferes with local zoning ordinances" (*Matter of WEOK Broadcasting Corp. v Planning Bd. of Town of Lloyd*, 165 AD2d 578, 581 [1991], *affd* 79 NY2d 373 [1992], citing *Matter of Town of Poughkeepsie v Flacke*, 84 AD2d 1, 5 [1981], *lv denied* 57 NY2d 602 [1982]; *see Monroe-Livingston Sanitary Landfill v Town of Caledonia*, 51 NY2d 679, 683-684 [1980]). DEC's SEQRA and permit approvals simply mean that plaintiff's proposal satisfies the applicable state law and regulatory standards.

Thus, DEC's SEQRA determination did not supplant the Town's zoning regulations governing review of special use permit applications, nor did it predetermine the Town's decision on plaintiff's permit application. Likewise, the SEQRA findings did not bind the Town to issue the requested special use permit or preclude it from employing the procedures—and considering the standards—in its own local zoning regulations, including the environmental and neighborhood impacts of the project (*see*

*Matter of Albany-Greene Sanitation v Town of New Baltimore Zoning Bd. of Appeals*, 263 AD2d at 646; *Matter of Wal-Mart Stores v Planning Bd. of Town of N. Elba*, 238 AD2d 93, 97 [1998]; *Matter of Zagoreos v Conklin*, 109 AD2d 281, 297 [1985]; *see also Matter of Chadwick Gardens Assoc. v City of Newburgh Zoning Bd. of Appeals*, 273 AD2d 232, 232 [2000]).

Indeed, DEC's SEQRA findings statement recognizes as much, specifically noting that DEC's "final decision on this proposal would not override the municipality's local land use or zoning ordinances, and [plaintiff] would be required to obtain any required local, state and federal approval prior to undertaking the [mining] activity." Thus, while the SEQRA process is concluded and the Town is bound by DEC's SEQRA determination, the Town remains entitled to independently review plaintiff's application for the special use permit in accord with the standards contained in its zoning regulations, including consideration of the "health, safety, welfare, comfort and convenience of the public," both in general and in the immediate neighborhood, as well as "the environmental impact" (Local Law No. 2 [1986] of Town of Nassau art VI [A]). The Town, in its review of, among other things, the environmental impact of the proposed quarry under its zoning regulations, will necessarily take into consideration and abide by DEC's SEQRA determination and mining permit approval, but these DEC determinations do not displace local special use permit review. Of course, the Town's ultimate determination is subject to CPLR article 78 review, and will be upheld only if it is rational and supported by substantial evidence (*see Matter of Feinberg v Board of Appeals of Town of Sanford*, 306 AD2d 593, 594 [2003]).[2]

Moreover, while DEC issued a mining permit (*see* ECL 23-2711), plaintiff has "no entitlement to a special use permit" unless it demonstrates that its proposed use at this location "conforms with the standards imposed by the zoning ordinance" (*Matter of Schadow v Wilson*, 191 AD2d 53, 57 [1993]; *see Town of Riverhead v T.S. Haulers*, 275 AD2d 774, 775 [2000]; *Matter of Cipperley v Town of E. Greenbush*, 262 AD2d 764, 765 [1999]; *Town of Throop v Leema Gravel Beds*, 249 AD2d 970, 971 [1998]). While the MLRL supersedes "all other state and local laws," supersession is expressly limited to laws "relating to the extractive mining industry" (ECL 23-2703 [2]), thereby only precluding local laws regulating actual extractive mining opera-

---

**2.** In the event that the Town evaluates environmental concerns which overlap with environmental findings made by DEC in the SEQRA process, any contrary or conflicting finding by the Town would, of course, have to be rationally based and supported by substantial evidence.

tions or activities (*see Matter of Hunt Bros. v Glennon*, 81 NY2d 906, 909 [1993], citing *Matter of Frew Run Gravel Prods. v Town of Carroll*, 71 NY2d 126, 131 [1987]; *Matter of Town of Parishville v Contore Co.*, 237 AD2d 67, 69 [1998]). Local governments are not prevented from "enacting or enforcing local laws or ordinances of general applicability" that do not directly "regulate mining and/or reclamation activities" (ECL 23-2703 [2] [a]) or local laws "which determine permissible uses in zoning districts" (ECL 23-2703 [2] [b]; *see Matter of Hunt Bros. v Glennon*, 81 NY2d at 909 n), and which "affect the extractive mining industry only in incidental ways" (*Matter of Hunt Bros. v Glennon*, 81 NY2d at 909).

As we have previously stated regarding this application, the MLRL does not "govern the manner in which decisions on special use permits must be made" (*Matter of Troy Sand & Gravel Co., Inc. v Town of Nassau*, 89 AD3d at 1181). Thus, under established law, "[a] municipality retains general authority [by means of its zoning powers] to regulate land use and to regulate or prohibit the use of land within its boundaries for mining operations, although it may not directly regulate the specifics of the mining activities or reclamation process" (*Preble Aggregate v Town of Preble*, 263 AD2d 849, 850 [1999], *lv denied* 94 NY2d 760 [2000]; *see Village of Savona v Knight Settlement Sand & Gravel*, 88 NY2d 897, 899 [1996]). Clearly, the statute expressly contemplates that municipalities retain the right to enact and enforce zoning ordinances that determine permissible uses in zoning districts, and the right to require a special use permit (*see* ECL 23-2703 [2] [b]). The zoning regulations here governing special use permits are the type of permissible local law of general applicability that is not superseded, although the Town is strictly limited in the conditions that it may attach to a special use permit for mining (*see* ECL 23-2703 [2] [b] [i-iv]; *Town of Riverhead v T.S. Haulers*, 275 AD2d at 775; *Matter of Schadow v Wilson*, 191 AD2d at 55-56; *compare Philipstown Indus. Park v Town Bd. of Town of Philipstown*, 247 AD2d 525, 526-528 [1998]). Hence, the special use permit zoning regulations are a valid exercise of the Town's powers, are not preempted by Mined Land Reclamation Law § 23-2703, and authorize the Town's consideration of, among other things, the environmental impact of plaintiff's proposed mining operation, as well as plaintiff's compelled reimbursement of consultation fees in connection with the Town's review of its special use permit application. Given the foregoing, plaintiffs have not demonstrated their entitlement to the drastic relief of a preliminary injunction (*see Moore v Ruback's Grove Campers' Assn., Inc.*, 85 AD3d 1220, 1221 [2011]; *Emerald Green Prop. Owners Assn., Inc. v Jada Developers, LLC*, 63 AD3d at 1397).

Rose, J.P., Lahtinen, Kavanagh and McCarthy, JJ., concur. Ordered that the order is reversed, on the law, without costs, motion denied in its entirety and preliminary injunction vacated, effective immediately.