*State of New York*
*Supreme Court, Appellate Division*
*Third Judicial Department*

Decided and Entered:  February 19, 2015                518921
_____

TROY SAND & GRAVEL COMPANY,
    INC., et al.,
                        Appellants,

        v                                   MEMORANDUM AND ORDER

TOWN OF NASSAU et al.,
                        Respondents.
_____


Calendar Date:  January 9, 2015

Before:  McCarthy, J.P., Rose, Egan Jr. and Devine, JJ.

                        _____


        Tuczinski, Cavalier & Gilchrist, PC, Albany (Andrew W.
Gilchrist of counsel), for appellants.

        Joseph M. Catalano, Rensselaerville (Bruce S. Huttner of
Donohue, Sabo, Varley & Huttner, LLP, Albany, of counsel), for
respondents.

        Underberg & Kessler, LLP, Buffalo (Edward P. Yankelunas of
counsel), for New York State Builders Association, amicus curiae.

        Couch White, LLP, Albany (Adam J. Schultz of counsel), for
New York State Construction Materials Association, Inc. and
another, amici curiae.

                        _____


Rose, J.

        Appeal from an order of the Supreme Court (Connolly, J.),
entered October 21, 2013 in Rensselaer County, which, among other
things, granted defendants' cross motion for summary judgment
dismissing the complaint.

In 2003, plaintiff Troy Sand & Gravel Company, Inc. applied for a mining permit from the Department of Environmental Conservation (hereinafter DEC) to operate a quarry in the Town of Nassau, Rensselaer County. Plaintiff also applied for a special use permit and site plan approval from defendant Town of Nassau. As lead agency for the coordinated State Environmental Quality Review Act (hereinafter SEQRA) process, DEC issued a positive declaration and Troy Sand prepared a draft environmental impact statement (hereinafter EIS) in 2006. After a public hearing and comment period, Troy Sand prepared a final EIS in 2007 and, shortly thereafter, DEC issued its SEQRA findings approving the project and granting the mining permit. DEC's findings were then unsuccessfully challenged by the Town in a proceeding that did not reach this Court, and the parties have since engaged in related litigation that has brought the matter before us on three prior occasions (see Matter of Troy Sand & Gravel Co., Inc. v Town of Nassau, 89 AD3d 1178 [2011], lv dismissed 18 NY3d 920 [2012]; Matter of Troy Sand & Gravel Co., Inc. v Town of Nassau, 82 AD3d 1377 [2011]; Matter of Troy Sand & Gravel Co., Inc. v Town of Nassau, 80 AD3d 199 [2010]).

In 2011, plaintiffs commenced this declaratory judgment action seeking, among other things, a declaration that the Town was bound by DEC's SEQRA findings. Supreme Court (Lynch, J.) granted a preliminary injunction that precluded the Town from conducting its own review of the environmental impact of the proposed quarry as part of its zoning determination. We then reversed that order and vacated the preliminary injunction (101 AD3d 1505 [2012]). Relying upon our decision, defendant Town Board of the Town of Nassau rescinded its prior determination that the permit application was complete in order to consider whether the SEQRA record was adequate to permit its own review under the environmental standards of its zoning law and whether any additional environmental information was needed to conduct its own jurisdictional review. Plaintiffs thereafter commenced a separate CPLR article 78 proceeding seeking to annul the rescission resolution.[1] They also sought summary judgment in

---

[1] Supreme Court denied plaintiffs' motion to consolidate the CPLR article 78 proceeding with this action and dismissed the

this action declaring, as relevant here, that the Town must base its environmental impact findings on the EIS record developed as part of the coordinated SEQRA process. Defendants cross-moved for summary judgment dismissing the complaint. Supreme Court denied plaintiffs' motion and granted the cross motion, finding that, based upon its reading of our 2012 decision vacating the preliminary injunction, plaintiffs were not entitled to, among other things, a declaration limiting defendants to consideration of the SEQRA record in making their environmental impact findings as part of their own jurisdictional review. Plaintiffs appeal and we reverse.

In our 2012 decision, we said that, although the Town is bound by DEC's SEQRA findings and it may not repeat the SEQRA process, it nevertheless retains the authority to make an independent review of plaintiffs' application for a special use permit in accord with the standards and criteria set forth in its applicable zoning regulation (101 AD3d 1505 [2012], supra). That regulation provides that the Town may consider, among other things, the "health, safety, welfare, comfort and convenience of the public," including "the environmental impact" of the proposed quarry (Local Law No. 2 [1986] of Town of Nassau art VI [A]). However, we did not say that the Town's independent review includes the ability to now gather additional environmental impact information beyond the full SEQRA record. Rather, in conducting its own jurisdictional review of the environmental impact of the project, the Town is required by the overall policy goals of SEQRA and the specific regulations governing findings made by "involved agencies" to rely on the fully developed SEQRA record in making the findings that will provide a rationale for its zoning determinations.

To reach this conclusion, we begin by taking note that the "basic purpose" of SEQRA "is to incorporate the consideration of

proceeding in a separate judgment. Plaintiffs' separate appeal of that judgment is decided herewith (Matter of Troy Sand & Gravel Co., Inc. v Town of Nassau, ___ AD3d ___ [decided herewith]).

environmental factors into the existing planning, review and decisionmaking processes of state, regional and local government agencies at the earliest possible time" (6 NYCRR 617.1 [c]; see Matter of City Council of City of Watervliet v Town Bd. of Town of Colonie, 3 NY3d 508, 518 [2004]). Consistent with this policy, the review of environmental considerations should be carried out "as efficiently as possible" (Matter of Coca-Cola Bottling Co. of N.Y. v Board of Estimate of City of N.Y., 72 NY2d 674, 681 [1988], citing ECL 8-0107, 8-0113 [3] [b]). Here, the full SEQRA record, covering thousands of pages, reflects the hard look at the proposed quarry's environmental impacts conducted by DEC with the Town's extensive involvement.

By virtue of the Town's jurisdictional authority over zoning determinations, it is an "involved agency" (6 NYCRR 617.2 [s]). The relevant SEQRA regulations require involved agencies to make a "written findings statement" either prior to or simultaneously with any "final decision to undertake, fund, approve or disapprove an action that has been the subject of a final EIS" (6 NYCRR 617.11 [c]). While the Town acknowledges that it must make such findings based on the record developed during the SEQRA process, it nevertheless argues that its own procedures entitle it to gather additional information regarding the environmental impact of the proposed quarry project as part of its review of the zoning applications. However, any such additional information regarding environmental factors would necessarily be outside the SEQRA record. Such a procedure would vitiate the efficiency and coordination goals of SEQRA (see e.g. 6 NYCRR 617.6 [b] [3]). Although the Town is entitled to conduct an independent review whereby it applies the standards and criteria found in its zoning regulations, its review of the environmental impact of the project is necessarily based on the EIS record because its zoning determinations must find a rationale in its SEQRA findings (see 6 NYCRR 617.11 [d] [3]).

In short, the EIS "fully evaluates the potential environmental effects, assesses mitigation measures, and considers alternatives to the proposed action" (Matter of Coca-Cola Bottling Co. of N.Y. v Board of Estimate of City of N.Y., 72 NY2d at 680, citing ECL 8-0109 [4], [2]). While the Town maintains its jurisdiction over the zoning determinations and, as

we have previously held, its SEQRA findings may differ from DEC's findings (see 101 AD3d at 1508; Matter of Albany-Greene Sanitation v Town of New Baltimore Zoning Bd. of Appeals, 263 AD2d 644, 646 [1999], lv denied 94 NY2d 752 [1999]), the Town "must rely upon the [final EIS] as the basis for [its] review of the environmental impacts that [it is] required to consider in connection with subsequent permit applications" (Matter of Guido v Town of Ulster Town Bd., 74 AD3d 1536, 1537 [2010], citing 6 NYCRR 617.6 [b] [3] [iii]).[2]

McCarthy, J.P., Egan Jr. and Devine, JJ., concur.


ORDERED that the order is reversed, on the law, without costs, defendants' cross motion denied, and plaintiffs' motion granted to the extent that defendants must base their determination of the environmental impact for zoning purposes on the record developed as part of the coordinated review conducted pursuant to the State Environmental Quality Review Act.


ENTER:

Robert D. Mayberger
Clerk of the Court

---

[2] Contrary to the Town's argument, our decision in Matter of Wal-Mart Stores v Planning Bd. of Town of N. Elba (238 AD2d 93, 97 [1998] [application considered under the town's zoning law required to meet applicable nonenvironmental criteria as well as requirements of SEQRA]) is not to the contrary.